A96A1751. DURANT v. THE STATE.

(476 SE2d 641)

Judge Harold R. Banke.

Julian Bruce Durant was convicted of two counts of aggravated stalking, two counts of littering, and one count of criminal trespass. On appeal, Durant enumerates three errors.

Durant pleaded guilty to burglarizing the Mother's Love Day Care Center ("the Center") and was sentenced to ten years' proba-

tion. While on probation, Durant initiated telephone and in person contact with Lynn Ross, the Center owner. Initially, the contact between them was both sporadic and amicable with Ross offering moral support to Durant and Durant bringing her cookies. Finally, sometime in the spring of 1994, Ross ordered Durant to leave the Center and then complained to law enforcement authorities about him. Durant's probation was amended, and he was ordered to "avoid all contact, either in person or by phone, with any day care facility."

After the amendment of Durant's probation, Ross testified that the Center became the target of numerous acts of vandalism including the placement of diapers soiled with feces on the Center's property and mailbox, acid poured on some of the Center's shrubbery, and the attachment of a bumper sticker stating, "Child Molestation is My Job" on the Center's van. Tim Ross, Lynn Ross's husband, discovered a spiked wooden board placed across the private driveway of their home along with baby diapers strewn about the property.

Eric Morris, Durant's former friend and roommate, testified that Durant became "obsessed with getting back" at the Rosses. Morris testified that Durant had confided plans of retaliation against the Rosses and the Center. Durant told Morris that he followed Ross home to discover where she lived. Morris admitted that he was with Durant when Durant placed the spiked board across the driveway, poured muriatic acid on the shrubs, and drove to the Center to take photographs.

During a search of Durant's bedroom, investigators discovered photographs of the Center, bumper stickers matching the one placed on the van, books concerning revenge, muriatic acid, soiled baby diapers, and a board scientifically identified by an expert witness as having been cut from the same piece of wood as the spiked board placed on the Rosses' driveway. *Held*:

1. Durant contends that the State failed to prove one of the aggravated stalking counts because it failed to establish that he intentionally contacted the victim at the Center in order to harass or intimidate her as alleged in Count 1 of the indictment. Count 1 alleged that between the dates of May 18, 1994, and June 30, 1994, the exact date being unknown, Durant "entered upon the premises of Mother's Love Child Care Center and contacted Lynn Ross at said day care center without the consent of Lynn Ross for the purpose of harassing and intimidating [her]. . . ."

Aggravated stalking, OCGA § 16-5-91 (a) requires, inter alia, making non-consensual contact with another person "for the purpose of harassing and intimidating the other person." Contact means to get in touch with and communicate with another person. *Johnson v. State*, 264 Ga. 590, 591 (1) (449 SE2d 94) (1994). " '[H]arassing and intimidating' means a knowing and willful course of conduct directed

at a specific person which causes emotional distress by placing such person in reasonable fear of death or bodily harm to himself or herself or to a member of his or her immediate family, and which serves no legitimate purpose." OCGA § 16-5-90 (a).

The State's evidence failed to show that Durant made any contact with Ross or performed any act of an harassing or intimidating nature between the dates set forth in Count 1 of the indictment. Ross's testimony and the other evidence related to incidents occurring between January 1, 1995, and March 11, 1995, the dates alleged in Count 2. In fact, Ross testified that at the time of the diaper incident in January 1995, she did not even suspect Durant as being the perpetrator. Nor did the State offer any evidence that Ross was "in reasonable fear of death or bodily harm" at the hands of Durant during the period alleged in Count 1. Compare *Robinson v. State*, 216 Ga. App. 816 (1) (456 SE2d 68) (1995) (victim feared for her life having endured defendant's telephone calls, threatening letter, and other misdeeds). It is undisputed that Durant's actions involving the bumper sticker, acid, and the spiked board occurred between mid-February and March 7, 1995, and obviously support the second count of aggravated stalking.

This failure of proof is not a minor deviation involving an inexact, unknown, unascertainable date. Compare *Keri v. State*, 179 Ga. App. 664, 668 (4) (347 SE2d 236) (1986). Instead, the lack of evidence shows a complete variance between the charges alleged and the evidence offered. As a general rule, the allegations and proof must correspond in order "(1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at trial; and (2) that he may be protected against another prosecution for the same offense. [Cit.]" *Talbot v. State*, 198 Ga. App. 636, 637 (402 SE2d 366) (1991).

The evidence was not sufficient to authorize a rational trier of fact to find the essential elements of aggravated stalking in Count 1. OCGA § 16-5-91. Compare *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Because the State failed to offer any evidence in support of the allegation framed in Count 1 of the indictment and the State's evidence only supported the second count of aggravated stalking, the State violated Durant's protection against multiple prosecutions for the same conduct. *Talbot*, 198 Ga. App. at 637. Accordingly, Durant's conviction as to Count 1 must be reversed.

2. The trial court did not abuse its discretion in denying Durant's motion for mistrial despite the improper placement of his character in evidence. *Langham v. State*, 263 Ga. 750, 751 (2) (438 SE2d 623) (1994). Prior to trial, the State requested a ruling on the admissibility of a copy of an accusation to which Durant had pleaded guilty and

been sentenced for two counts of burglary. One count was the burglary of the Center, and the other count was an unrelated burglary of a physician's office building. The trial court overruled Durant's objection that the document impermissibly placed his character in evidence. After Durant's probation officer identified the accusation and testified that it charged Durant with two counts of burglary, Durant objected and moved for a mistrial. The officer's testimony did not specifically mention the burglary of the doctor's office or indicate that both counts did not involve the Center. During the hearing on this motion, the prosecutor offered to redact the accusation to reflect only the burglary of the Center and to not elicit any testimony concerning the other, unrelated burglary conviction. Defense counsel did not ask for remedial instructions or other relief and renewed the motion for a mistrial.

Although evidence of the burglary conviction of the Center was admissible, admission of the other, unrelated burglary conviction was plainly error since Durant had not first placed his character in issue. OCGA § 24-9-20 (b). However, based on the overwhelming evidence of Durant's guilt and the remedial measures taken, we find that it is highly probable that the error did not contribute to the jury's verdict. *Query v. State*, 217 Ga. App. 61, 63 (3) (456 SE2d 704) (1995).

3. The trial court did not err by refusing to admit evidence of Morris's nolo contendere plea to criminal trespass. Durant sought to introduce the conviction to impeach Morris who testified as a witness for the State. But because misdemeanor criminal trespass is not an offense involving moral turpitude, its exclusion was proper. *Barker v. State*, 211 Ga. App. 279, 280 (4) (438 SE2d 649) (1993).

*Judgment affirmed in part and reversed in part. Andrews and Smith, JJ., concur.*

DECIDED SEPTEMBER 24, 1996.

*L. Clark Landrum*, for appellant.

*C. Paul Bowden, District Attorney, Bradford R. Pierce, Assistant District Attorney*, for appellee.

